IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **JENNA FERRIS** <br> **11106 Wilder Way** <br> **Owings Mills, MD 21117** <br><br>     **Plaintiff** <br><br> **v.** <br><br> **Dr. Kimberly Hollister** <br> **6938 Elm Valley Drive, Suite 103** <br> **Kalamazoo, MI 49009** <br><br>     **Defendant** | * <br><br> * <br><br><br> *   Case No.: <br><br> * <br>      Jury Trial <br><br><br> * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **COMPLAINT FOR BREACH OF CONTRACT**

Now Comes, Plaintiff, Jenna Ferris, by and through her attorneys, David M. McFadden, Esquire and The McFadden Law Offices, LLC to file this Complaint for Breach of Contract and in support thereof respectfully states the following

### **JURISDICTION**

1. This Court has jurisdiction over this matter under 28 U.S.C. section 1332, diversity jurisdiction, as neither party is from the same state. The Plaintiff is a resident of Maryland and the Defendant is a resident of Michigan.

### **VENUE**

2. This is the proper venue to bring the cause of action under 28 U.S.C section 1391 because a substantial part of the events giving rise to the claim occurred in Maryland.

## PARTIES TO THE COMPLAINT

3. The Plaintiff in this Complaint is Jenna Ferris, located at 11106 Wilder Way, Owings Mills, Maryland, Baltimore County, her telephone number is 443-787-8129 and her email address is jennaferris510@gmail.com.

4. The Defendant in this Complaint is Dr. Kimberly Hollister, located at 6938 Elm Valley Drive, Suite 103, Kalamazoo, Michigan 49009, her telephone number is 269-359-5390 and her email address is hollisterksm@yahoo.com

## FACTS COMMON TO ALL COUNTS

5. Plaintiff is a resident of Maryland.

6. Defendant is a resident of Michigan.

7. The Plaintiff and Defendant (hereinafter "the parties") entered into an oral contract on around February 1, 2024.

8. This oral contract morphed into a written contract almost overnight.

9. Originally, the parties were looking at office space in Maryland, but then Defendant, a resident of Michigan, and the audiologist said it would be easier for her to do it in Michigan.

10. On or around February 12, 2024, the parties began communicating via text messages and emails multiple times throughout the day, would then have a phone call to recap everything at night, which included leasing office space, acquiring equipment, getting the Defendant trained through VES and TruHearing, so she could start seeing patients and begin repaying the Plaintiff as she promised.

11. The Defendant constantly barraged and hounded the Plaintiff via call, text and

Docusign Envelope ID: 873EEF98-5D5E-4A32-BC7B-8212F2A04FE3

email to get the business up and running, I have only attached a few of them, but it entails over three hundred (300) text and another one hundred (100) emails, because she was working doordash at the time, the Plaintiff was working a full-time job, and some of the messages from the Defendant to the Plaintiff were so emotionally charged that the Plaintiff's will was overborne and she finally relented to front the money so that the harassment would stop.

12. After a few months, the parties started the business and called it Hollister and Ferris Audiology Services, LLC, which was registered in the State of Maryland and the Plaintiff was the sole owner of the business.

13. The contract called for the Plaintiff to pay the costs to get the business up and running and Defendant, as a 1099 employee, would repay the money as the business started making money.

14. The contract was for the Defendant, as an audiologist, to see hearing aid patients and check their hearing.

15. The money would be paid by both Veterans Services (VES) and TruHearing, which would be deposited into the business account set up by Plaintiff, in Maryland.

16. The contract called for the Plaintiff to then take thirty (30) percent 30% from the money deposited and the Defendant would be paid seventy (70) percent 70% from that account.

17. This would continue until the Defendant could repay all the money that was fronted by the Plaintiff to get the business up and running.

18. The repayment would be for the rent, a hearing aid booth, equipment and

anything else that was purchased to set up the business.

19. As the Defendant re-paid more and more money, she would then get a higher stake in the company, ultimately becoming a partner in it.

20. The Plaintiff planned to open the business in early June, but the Defendant insisted and ultimately coerced the Plaintiff to open in April because the Defendant was not fully employed.

21. In fact, on April 12, 2024, the Plaintiff sent a text to the Defendant that "we will need to come up with a plan for May because I never intended to be using my paychecks to keep the business going while the place sits empty…I need you to answer the phone calls and get patients coming in as I cannot keep funding the business." (Exhibit A.)

22. On April 18, 2024, the Defendant sends the Plaintiff a lengthy text, which says that "I have three (3) TH (TruHearing) patients scheduled for Friday and Monday…I will also have all your money back to you. (Exhibit B).

23. On April 19, 2024, Defendant, sent an email to the Plaintiff, which states that "I canceled today's TruHearing patients and will do so for the other two (2) for Monday this morning…[after talking to TH rep] that morning [they] told me the May release of new products would bring out a ton of waiting people…". (Exhibit C).

24. The final conversation between the Plaintiff and Defendant via email unequivocally established that there was a contract, the Plaintiff fulfilled her end, the Defendant breached it, her actions and ultimate inactions shock the conscience, especially, as a doctor, and she acknowledged that she owed the Plaintiff for all the money she had spent. (Exhibit D).

25. It turned out that the Defendant saw several patients, but that money was never deposited into the business account, so the Plaintiff is unsure of where it went or why it was not directly deposited into her bank account.

26. The facts clearly show that this matter started as an oral contract, that the Plaintiff would front the operating costs for the business, and the Defendant would repay those operating costs by seeing patients, and once that money was re-paid, she would become a partner with the Plaintiff.

27. The facts also clearly show that this oral contract was later reduced to writing via text messages and emails where the Defendant clearly acknowledged that she owed the Plaintiff all the money she had fronted for the business.

28. The Plaintiff only fronted the operating costs for the business because she relied on the Defendant's assertions that she would be seeing patients to repay everything, and once that happened and she became a partner, the Plaintiff's cut would be reduced; however, the Defendant breached her part of the contract by misleading the Plaintiff, refusing to see patients that were already set to come in, who would have helped starting to repay the Plaintiff, and the patients that she did see without the knowledge of the Plaintiff, never went into the Plaintiff's operating account.

## BREACH OF CONTRACT

## COUNT I

29. The Plaintiff incorporates by reference the facts from Paragraphs 1-28 as if fully set forth herein.

30. The parties entered into a contract whereby the Plaintiff would front the operating

for the business, Hollister and Ferris Audiology Services, LLC, and the Defendant would repay that debt by seeing patients.

31. The Plaintiff made an offer to the Defendant, the Defendant accepted that offer and the consideration was the purchasing of all the equipment, so there is no question that the parties entered into a contract.

32. The Plaintiff fulfilled her end of the contract, she even did it early as she was coerced into starting it April 1, 2024 as opposed to the original date of June 1, 2024 at the relentless insistence and emotional stress she put on the Plaintiff.

33. The Plaintiff reasonably relied on the assertions made by the Defendant about being repaid, which were detrimental to the Plaintiff and has caused significant financial hardship to the Plaintiff, and without those assurances by the Defendant, the Plaintiff would have never entered into the contract with the Defendant.

34. Additionally, it is clear by the Defendant's actions or inactions that she never intended to actually repay the Plaintiff, because if she had, she would have seen the patients that were already on the books, and that money would then have been deposited into the business operating account.

35. Once the money was repaid to the Plaintiff, she would have continued to get money from the business, so her reliance on the Defendant's statements also cost her to have loss profits.

36. The amount in controversy is more than $75,000 because of the hearing aid booth, about $30,000 with interest continuing to accrue, operating costs and equipment about $5,000, rent about $9,000, retrieving and storing the hearing aid booth about $10,000,

malpractice insurance about $5,000, and lost profits of at least $150,000, which we believe will be the approximate total from both VES and TruHearing once all the bank accounts and statements from the Defendant are received after subpoenaing them and through Discovery.

The Plaintiff requests a jury of their peers to hear this case and makes a demand well in excess of Seventy-Five Thousand Dollars.

WHEREFORE, the Plaintiff requests that this Honorable Court issue the following relief:

    A. Grant Plaintiff Attorney's fees,

    B. Grant Plaintiff the costs of these proceedings, and

    C. For such other and further relief as the nature of this cause may require

Respectfully Submitted:

*David M. McFadden*
David M. McFadden, Esquire
The McFadden Law Offices, LLC
16 North Court Street
Westminster, Maryland 21157
ph: (410) 871-0003/fax: (410) 871-0123
Federal ID: 21811
dave@mcfaddenlawoffices.com
*Attorneys for Plaintiff*

# AFFIDAVIT

I SOLEMNLY SWEAR AND AFFIRM UNDER THE PENALTIES OF PERJURY that the contents of the foregoing Complaint for Breach of Contract are true to the best of my knowledge, information, and belief.

Signed by:
*Jenna Ferris*
C8CF958454DF436...
Jenna Ferris

2/21/2025
Date